**UNITED STATES of America, Plaintiff,**

v.

**Angelo FAVAROLO, Defendant.**

**No. CR 85–0280–02.**

United States District Court,
E.D. New York.

Feb. 28, 1994.

Zachary Carter, U.S. Atty. by Charles Hammerman and Beth P. Schwartz, Asst. U.S. Attys., Garden City, NY, for plaintiff.

DePetris & Meyer by David A. DePetris, Merrick, NY, for defendant.

*AMENDED MEMORANDUM
AND ORDER*

WEXLER, District Judge.

*BACKGROUND*

Defendant Angelo Favarolo ("Angelo") was convicted after a jury trial on November 18, 1985 and was sentenced on May 17, 1988, to a term of imprisonment of seven years, execution of which was suspended, five years probation, 300 hours community service and a $100,000.00 fine. Between May of 1988 and this date, Angelo paid a total fine of $11,500.00. As of October 21, 1993, the balance owing to the government on the fine, with interest, and after allowances for payments made by Angelo, is $16,858.57.

The United States Probation Department submitted a Violation of Probation petition to the Court recommending that Angelo be found guilty of violating his probation for the following reasons: (1) for failing to pay his fine after repeated requests; (2) for admittedly associating with criminals; (3) for filing fraudulent bankruptcy papers with the U.S. Bankruptcy Court; and (4) for defrauding the Court by not making payments on his fine.

This Court conducted hearings on July 20, 1993; September 23, 1993; September 29, 1993; October 1, 1993 and October 12, 1993, and now makes the following findings.

**A. *Sale of Home***

Angelo and his wife, Ernestina Favarolo, sold their home at 1010 Bellmore Road, Bellmore, New York to their son, Salvatore, for $250,000. The sale took place in August of 1987, which was prior to Angelo's May 17, 1988 sentencing but after his November 18, 1985 conviction. Angelo and his wife continued to live in the home after the sale.

Angelo claims to have received $25,000 cash and a check for $41,000 for the sale.

The $41,000 check was from a corporation known as Giusalton Enterprises, Inc. ("Giusalton"), a corporation wholly owned by Angelo. The check, however, was signed by his son, Salvatore. Angelo's 1987 and 1988 tax returns show no profit or loss from the sale of the home and list his son Salvatore as a dependent. At the time of the sale, Salvatore was in his early twenties and single and this Court was not presented with any evidence explaining how Salvatore obtained the money to purchase the home. No part of the $25,000 cash or the $41,000 check went to the government. Moreover, in 1989, Angelo received $35,000 from Giusalton to make mortgage payments to Dime Savings Bank for the 1010 Bellmore Road property in which Angelo and his wife were living and which he had allegedly previously sold to his son Salvatore.

## B. *Transfers Through Corporations*

Angelo is the sole owner of the following corporations: Multifreeze, Inc. ("Multifreeze"), Giusalton and 60 M. Realty Corp. ("60 M"). In addition, Angelo is the controlling partner of Sillee 60 M Realty Corp. ("Sillee"). Finally, an entity known as Mosuki Corp. ("Mosuki") was incorporated in October 1991 with all shares going to Angelo's two sons, Anthony and Salvatore. Upon the two sons's receiving the shares, they immediately endorsed the power of transfer to Angelo but the transfer was not recorded and is still in effect. From the evidence offered, Angelo controlled Mosuki and is in fact the owner.

In December 1991, Multifreeze sold inventory to Mosuki for $206,590.89. Multifreeze's records failed to show assets from that sale. In 1992, Angelo transferred Giusalton to Multifreeze without consideration. On July 10, 1992, seven months after the sale for $206,590.89, Multifreeze filed for bankruptcy under Chapter 7. Multifreeze's bankruptcy petition failed to show: (1) that Multifreeze was the owner of Giusalton, which Multifreeze acquired in 1992; (2) the assets of the sale to Mosuki for $206,590.89 which occurred seven months earlier; (3) a boat owned by Multifreeze valued at $73,500, which Angelo continued to use and control even after the bankruptcy filing.

On August 31, 1989, Angelo, through the Sillee partnership, purchased 30 Old Dock Road in Yaphank for $720,000, with $70,000 down. Angelo was sent a legal bill dated September 12, 1989, for $3,300 to cover the closing costs for this transaction.

On February 9, 1993, Angelo, again through Sillee, transferred the 30 Old Dock Road, property to 60 M without consideration. That same day, the same property was transferred by 60 M to Mosuki, again with no consideration. On April 27, 1993, Angelo, on behalf of 60 M filed for bankruptcy under chapter 11 and failed to report that it transferred the 30 Old Dock Road property to Mosuki, without consideration, less than ninety days earlier.

## C. *Angelo's Assets*

1. 60 M's bank statements of January 4, 1989 and January 18, 1989, showed cash on hand of $113,888.36 and $84,344.42, respectively.

2. On June 15, 1989, Angelo's financial statement reflected the following assets:

| | |
|---|---|
| Cash | 40,000.00 |
| Receivables | 325,000.00 |
| Giusalton & 60 M Realty Corp. | 1,000,000.00 |
| Multifreeze, Inc. | 3,000,000.00 |
| Jewelry | 275,000.00 |
| Art | 120,000.00 |
| Miscellaneous | 75,000.00 |
| TOTAL ASSETS | $4,835,000.00 |

3. On December 21, 1989, Angelo entered into an agreement to purchase a 6,250 square feet condominium, unit 701-9, in Bay Shore, New York, for a price of $406,250.00.

| | |
|---|---|
| On signing: | $ 20,312.50 |
| On closing: | 20,312.50 |
| Mortgage: | 304,687.50 |
| Small Business Loan: | 60,937.50 |
| | $406,250.00 |

4. Multifreeze's Bank statements showed cash available in the following months of 1990:

| | |
|---|---|
| June | $152,000.00 |
| July | 240,000.00 |
| August | 192,000.00 |
| September | 108,000.00 |

5. Angelo's 1990 salary from Multifreeze was $204,730.

6. Multifreeze's total assets for January, 1991 was $708,000.00.

### D. *Purchases by Angelo*

In February 1990, Multifreeze leased a Chevrolet Corvette at $756 for the first month and $378 for the remaining 34 months. The lease was signed by Angelo as President. On January 25, 1991, Multifreeze leased a Mercedes 500SEL at $1240 for the first month and $620 for the remaining 34 months. The lease was signed by Angelo as President. On June 25, 1991, Angelo paid $2,681.82 for boat dockage. In May 1992, Angelo purchased $8,347.65 worth of jewelry from the London Jewelry Store in Greenvale, New York. In the summer of 1992, Angelo spent $900.00 to dock his boat and in January 1993, spent $908.70 to service the boat. On March 26, 1993, Angelo signed a mooring agreement for summer dockage at $1,276 and paid $300 toward the agreement. On March 10, 1993, Mosuki leased a Corvette and Mercedes for one year at $985 per month. Angelo, as President, signed on behalf of Mosuki. Finally, Angelo purchased another boat for $15,000 in 1988.

### E. *Bankruptcy Fraud*

During 1992, a series of checks were made payable to Multifreeze after Multifreeze had filed for bankruptcy. The checks were altered and changed to read the name of Mosuki and deposited into Mosuki's account for a total of $9,512.40 and never reported to the Bankruptcy Court.

### CONCLUSION

1. From 1987 to the present, Angelo had sufficient funds to pay his fine.

2. From 1987 to the present, Angelo willfully and intentionally failed to pay his fine.

3. Angelo, through his fraud and deceit, manipulated various corporations, partnerships, members of his family and the bankruptcy court to avoid paying his fine.

4. For his intentional and fraudulent failure to pay his fine, this Court finds that Angelo has violated the terms of his probation by:

(a) Failing to pay his fine after repeated requests by the Probation Department;

(b) Filing fraudulent bankruptcy papers with the United States Bankruptcy Court and by failing to advise the Bankruptcy Court of transfers before and after the filings;

(c) Defrauding the Court with respect to his ability to pay the fine via fraudulent transfers to and through family members, partnerships and corporations.

5. There is insufficient evidence to hold that Angelo associated with criminals.

6. The Court sets this matter down for sentencing on January 11, 1994 at 9:00 a.m.

SO ORDERED.